**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

DAVID P.,

          **Plaintiff,**

  v.                              Civil Action 1:23-cv-331
                                     Judge Michael R. Barrett
                                     Magistrate Judge Kimberly A. Jolson

COMMISSIONER OF
SOCIAL SECURITY,

          **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, David P., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the following reasons, it is **RECOMMENDED** that the Court **SUSTAIN** Plaintiff's Statement of Errors (Doc. 8) and **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** the case to the Commissioner and the ALJ under Sentence Six of § 405(g).

**I.**     **BACKGROUND**

Plaintiff filed his applications for DIB and SSI in August 2020, alleging that he was disabled beginning June 1, 2019, due to cervical pain with bilateral arm and hand involvement, lumbar pain, sciatica with left leg involvement, and chronic fatigue. (R. at 350–71, 404). After his applications were denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephonic hearing on February 8, 2022. (R. at 46–74). The ALJ denied Plaintiff's applications in a written decision on March 18, 2022. (R. at 21–45). When the Appeals Council denied review, that denial became the final decision of the Commissioner. (R. at 8–14).

Next, Plaintiff brought this action. (Doc. 1). As required, the Commissioner filed the administrative record, and the matter has been fully briefed. (Docs. 7, 8, 9, 10).

### A.     Relevant Hearing Testimony

The ALJ summarized Plaintiff's hearing testimony as follows:

> At the hearing, [Plaintiff] testified that he has lower back pain radiates to his hips and down his legs, and neck pain that radiates down his shoulders and to his hands, and makes his left hand effectively useless. His pain makes it difficult to move his neck, and makes driving difficult. His feet will go numb almost as soon as he stands up, causing difficulty with maintaining balance, and making him trip. This type of radiating numbness and pain is a not uncommon symptom of degenerative spinal conditions. [Plaintiff] gets short of breath with activity, especially in extreme temperatures, and he uses multiple inhalers throughout the day. He quit smoking a few weeks before the hearing. [Plaintiff] can only sit for up to fifteen minutes before needing to stand and stretch, is unable to raise his arms over his head, and cannot lift even ten pounds. Bending over to try to lift things makes him feel "sick and dizzy." [Plaintiff] has difficulty maintaining grip on things and engaging in fine manipulation tasks. This makes it difficult to maintain grip or open jars. He also has difficulty bathing himself because of problems reaching with his arms. [Plaintiff] takes naps during the day, wears a wrist brace for a few hours, and uses a cane. He is able to control some of his pain symptoms with medication, but as a side effect these make him "loopy."

(R. at 34, footnote omitted).

### B.     Relevant Medical Evidence

Plaintiff's statements of error concerns Plaintiff's physical impairments. The ALJ summarized the relevant evidence relating to Plaintiff's physical impairments as follows:

> The exertional, postural, reaching, manipulative, climbing, and hazard exposure limitations [] are based on [Plaintiff]'s degenerative disc disease, polyarthralgia, and obesity. His degenerative disc disease is substantiated by multiple assessments of neuropathic pain, left-sided sciatica, lumbar pain, and cervical radicular pain between at least March 2019 and August 2020 by James F. Slaughenhaupt II, D.O. (see, for example, Exhibit 2F at 10, 23). The March 2019 assessment was based in part on the impression of mild degenerative lumbar changes by William Boyce, M.D., based on a review of x-ray imaging (Exhibit 2F at 47). Also as part of that examination, Dr. Slaughenhaupt assessed [Plaintiff] with bilateral neck pain and bilateral hand paresthesia (Id. at 22-4), although Jeffrey Cushman, D.O., who reviewed x-ray imaging, noted an impression of an unremarkable study of the cervical spine (Id. at 49). In May 2019, Dr. Slaughenhaupt assessed [Plaintiff] with

2

bilateral carpal tunnel syndrome (Id. at 16). In August 2020, Michael David Lakes, D.O., examined [Plaintiff] in the emergency department and noted a final impression of a lumbar strain, an acute exacerbation of chronic lower back pain, and sacroiliac inflammation (Id. at 15). In June 2021, Christine Nichole Stahl, CNP, assessed [Plaintiff] with cervical radicular pain and neuropathic pain (Exhibit 6F at 13). In September 2021, Karen Marie Buddendeck, CNP, assessed [Plaintiff] with cervical degenerative disc disease, lumbar facet arthropathy, lumbar or lumbosacral disc degeneration, myofascial pain, and sacroiliitis (Exhibit 9F at 37). Later that month, Nirmala Rose Abraham, M.D., performed a bilateral sacroiliac joint injection, noting pre- and post-operative diagnoses of sacroiliitis (Id. at 27). In October 2021, Dr. Abraham noted an impression of lumbar facet arthropathy, lumbar or lumbosacral disc degeneration, sacroiliitis, and myofascial pain (Id. at 23). In November and December 2021, Dr. Abraham performed a pair of bilateral medial branch nerve blocks and a pair of radiofrequency ablations, noting pre- and post-operative diagnoses of lumbar facet arthropathy (Exhibits 9F at 15, 11F at 16, 21, 26).

[Plaintiff]'s polyarthralgia is substantiated by multiple diagnostic assessments by Dr. Slaughenhaupt between at least March 2019 and August 2020 (see, for example, Exhibit 2F at 9, 16, 23). Maria Thomas-John, M.D., also assessed [Plaintiff] with polyarthralgia in September 2020 (Exhibit 1F at 5), as did Ms. Stahl in June 2021 (Exhibit 6F at 13). A number of treatment providers, including Dr. Slaughenhaupt, Dr. Thomas John, Ms. Stahl, and Meenal Raje, P.T., also noted diagnostic assessments of fibromyalgia (see, for example, Exhibits 3F at 2, 6F at 3, 35, 10F at 21). *** Dr. Slaughenhaupt and Ms. Stahl both assessed [Plaintiff] with sleep disturbances in 2021, with Ms. Stahl further assessing malaise and fatigue (Exhibit 6F at 13, 35), and depression is also referenced as meeting the requirements of §II(B). ***

[Plaintiff]'s testified-to height of 71 inches and weight of 240 pounds correspond to a body mass index (BMI) of 33.5, which is indicative of obesity. *** Hayley Rachelle Burnett, CNP, also assessed [Plaintiff] with obesity due to excess calories in February 2022 (Exhibit 14F at 5). ***

The environmental exposure limitations [] are based on [Plaintiff]'s chronic obstructive pulmonary disease (COPD) and emphysema, which are substantiated by multiple assessments of COPD and/or tobacco abuse by Dr. Slaughenhaupt between at last March 2019 and January 2021 (see, for example, Exhibits 2F at 24, 6F at 38). On multiple occasions in 2021, Rami Alashram, M.D., assessed [Plaintiff] with COPD and restrictive lung disease, and noted a 25 pack-year smoking history (see, for example, Exhibits 6F at 23, 8F at 27). In June 2021, Terry Tomlinson, M.D., reviewed CT scan results and noted an impression of extensive paraseptal emphysema (Exhibit 6F at 46). Later that month, Ms. Stahl assessed [Plaintiff] with COPD and tobacco abuse (Id. at 13). In September and October 2021, Dr. Abraham and Ms. Buddendeck both noted that [Plaintiff] was a cigarette

3

>smoker (Exhibit 9F at 23, 37). In February 2022, Ms. Burnett assessed [Plaintiff] with COPD and centrilobular emphysema (Exhibit 14F at 4-5).

(R. at 32–33).

### C. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirement through June 30, 2021. (R. at 27). He has not engaged in substantial gainful employment since June 1, 2019, the alleged onset date. (*Id.*). The ALJ also determined that Plaintiff has the following severe impairments: degenerative disc disease, polyarthralgia, chronic obstructive pulmonary disease, emphysema, obesity, depressive disorder, anxiety disorder, and borderline intellectual functioning. (*Id.*). Still, the ALJ found that none of Plaintiff's impairments, either singly or in combination, meets or medically equals a listed impairment. (*Id.*).

The ALJ assessed Plaintiff's residual functional capacity ("RFC") as follows:

>After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following exceptions: No more than frequent handling, fingering, feeling, or reaching in all directions with the bilateral upper extremities. No more than occasional balancing, stooping, kneeling, crouching, or climbing of ramps and stairs. No crawling or climbing of ladders, ropes or scaffolds. [Plaintiff] should avoid concentrated exposure to extreme cold, extreme heat, humidity, wetness, and atmospheric conditions as defined in the Selected Characteristics of Occupations, as published by the U.S. Department of Labor (S.C.O.). No exposure to unprotected heights or moving mechanical parts. No requirement to perform commercial driving. [Plaintiff] is limited to performing unskilled, simple, routine, and repetitive tasks. [Plaintiff] is unable to perform at a production-rate pace, such as assembly line work, but can perform goal-oriented work, such as office cleaner positions. No more than occasional and superficial contact, as defined, with supervisors, co-workers, and the general public. No teamwork, tandem tasks, or over-the-shoulder supervision. No more than occasional changes in an otherwise routine work setting, explained in advance to allow time for adjustment to new expectations.

(R. at 31).

As for the allegations about the intensity, persistence, and limiting effects of Plaintiff's

4

symptoms, the ALJ found that Plaintiff's symptoms "are not entirely consistent with the medical evidence and other evidence in the record." (R. at 35).

The ALJ determined that Plaintiff is unable to perform his past relevant work as a landscape laborer, house repairer, or waterproofer. (R. at 37). The ALJ relied on testimony from a Vocational Expert ("VE") to determine that given Plaintiff's age, education, work experience, and RFC, he was able to perform work that existed in significant numbers in the national economy, such as a lens inserter/bench assembler, table worker, or weight tester. (R. at 38–39). Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since June 1, 2019. (R. at 39).

### D. The Appeals Council Decision

The Appeals Council discussed the additional evidence submitted after the ALJ's decision:

> You submitted medical records from Kettering Health dated March 3, 2022 (5 pages). This evidence is not material because it is not relevant to your claim for disability. We did not exhibit this evidence.
>
> You submitted correspondence from Robert W. Neel, IV, M.D., dated December 6, 2022 (1 pages) and medical records from Kettering Health dated May 2, 2022 to October 15, 2022 (122 pages). The Administrative Law Judge decided your case through March 18, 2022. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before March 18, 2022.

(R. at 9).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

### III. DISCUSSION

Plaintiff contends that a Sentence Six remand is warranted due to new evidence confirming a formal diagnosis of Amyotrophic Lateral Sclerosis (ALS) with bulbar features. (Doc. 8 at 5, citing to R. at 75–203). This evidence includes: a letter dated December 6, 2022, from Dr. Robert Neel confirming Plaintiff's ALS diagnosis (R. at 75); records from a March 3, 2022, lumbar translaminar epidural procedure noting Plaintiff's diagnoses of lumbar radiculopathy and degenerative disc disease (R. at 199–203); and medical records from Kettering Health dated May 2, 2022, to November 14, 2022 (R. at 77–198). From May 2022 through November 2022, Plaintiff was seen for numerous medical appointments, including physical therapy and emergency room visits. (*See, e.g.*, 77–198). At these appointments, medical providers noted Plaintiff struggled with weakness on his left side and with his upper extremities and had difficulties with speech. (R. at 95, 105, 116, 168, 190–191). In March 2022, the same month as the ALJ's decision, medical providers also instructed Plaintiff to use a cane to walk. (*See* R. at 92–93, 95–96, 97, 174–175, 177, 179, 181, 183, 185). Most notably, in October 2022, Plaintiff was referred to the hospital emergency department to receive CT scans, an MRI, and an EMG to confirm suspicions of ALS. (R. at 103–110). While these tests were not conclusive, providers stated that there was "still high

6

suspicion for motor neuron disease" such as ALS. (R. at 110–113; *see also* R. at 126–27 (describing doctor's concerns that Plaintiff had ALS and potentially other motor neuron diseases)). Plaintiff was instructed to follow-up with outpatient neurology for continued testing, and Dr. Neel's letter states that by December 6, 2022, Plaintiff received an ALS diagnosis. (R. at 110–113; *see* R. at 75).

Plaintiff argues that this evidence is new and material because it explains why medical providers struggled to reconcile Plaintiff's symptoms, sometimes diagnosing him with lumbar strains and chronic pain and other times diagnosing him with fibromyalgia. (Doc. 8 at 6, citing R. at 513, 515, 521, 522, 565, 580). Plaintiff also argues that since ALS is a progressive disease that is known to be difficult to diagnose, the new medical evidence explains his symptoms during the relevant period and bolsters the credibility of his subjective reports. (R. at 6–7). As such, Plaintiff contends that there is a reasonable probability that the ALJ's decision would have been different had she considered these records.

The Commissioner opposes a Sentence Six remand, arguing that since the ALJ's determination that Plaintiff was not disabled occurred eight months before Plaintiff was diagnosed with ALS, the new medical records do not "relate to the time period at issue." (Doc. 9 at 12). As such, the Commissioner also argues that this evidence is not material, "because there is no probability that the ALJ would have reached a different conclusion about the nature of Plaintiff's disability through March 18, 2022." (Doc. 9 at 15). Here, the Undersigned disagrees and recommends remand.

Under Sentence Six of 42 U.S.C. § 405(g), the Court may remand a case to the Social Security Administration "because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the

7

outcome of the prior proceeding." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). A Sentence Six remand for consideration of additional evidence is warranted only if (1) there is good cause for the failure to incorporate this evidence into the record at the prior hearing, and (2) the evidence is new and material. 42 U.S.C. § 405(g); *see Melkonyan*, 501 U.S. at 89; *see also Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Plaintiff, the party seeking a Sentence Six remand in the present case, bears the burden of establishing the two requirements. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006). Evidence is "new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). To be "material," new evidence (1) must be relevant to and probative of an applicant's condition prior to the Commissioner's decision, and (2) must establish a reasonable probability that the Commissioner would have reached a different decision if the evidence had been considered. *Smith v. Comm'r of Soc. Sec.*, No. 1:07-cv-199, 2008 WL 2311561, at *6 (S.D. Ohio June 4, 2008) (citing *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)). To establish good cause in this Circuit, a plaintiff "must give a valid reason for his failure to obtain evidence prior to the hearing" for inclusion in the administrative record. *Oliver*, 804 F.2d 966 (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)). "Evidence produced by continued medical treatment" meets the good-cause requirement for a Sentence Six remand, unlike evidence generated "for the purpose of attempting to prove disability." *Smith v. Comm'r of Soc. Sec.*, No. 2:18-cv-01171, 2020 WL 358703, at *8 (S.D. Ohio Jan. 22, 2020); *see also Powell v. Comm'r of*

8

*Soc. Sec.*, No. 3:07-cv-074, 2008 WL 886134, at *9 (S.D. Ohio March 28, 2008) (citing *Koulizos v. Sec'y of Health & Human Servs.*, 802 F.2d 458, 1986 WL 17488, at *2 (6th Cir. Aug. 19, 1986)).

To start, the Commissioner concedes that almost all of the evidence Plaintiff submitted to the Appeals Council was new, with the exception of medical records from Kettering Health dated March 3, 2022. (Doc. 9 at 9–10; *see* R. at 75–198). Plaintiff does not offer a reason why these records were not available to be submitted to the ALJ prior to her decision, and nothing in the record shows an attempt by Plaintiff or his counsel to timely present these materials to the ALJ. (*See* Doc. 8; *see e.g.*, R. at 21–74 (showing no attempts by Plaintiff to convey these materials to the ALJ)). Yet the Court also notes that the ALJ's decision is dated March 18, 2022, just fifteen days after this medical appointment, and acknowledges that Plaintiff could not know when the ALJ would make her decision. (R. at 21); *see Pauley v. Berryhill*, No. 3:16-cv-31, 2017 WL 1093283, at *2 (S.D. Ohio Mar. 23, 2017) (finding that MRI results were new evidence when the MRI was taken six days before the ALJ's decision but not submitted to the ALJ).

But ultimately, the Court agrees with the Commissioner that this portion of the medical records is not material. These records show that Plaintiff received a lumbar translaminar epidural procedure to help manage lower back pain. (R. at 199–203). But Plaintiff's lower back pain is noted throughout the record the ALJ considered and throughout her opinion, and as such, these records are cumulative and do not warrant a Sentence Six remand. *LeMasters v. Comm'r of Soc. Sec.*, No. 3:07-cv-224, 2008 WL 4426800, at *10 (S.D. Ohio Sept. 25, 2008) ("New evidence is cumulative and not sufficient to warrant remand if it relates to an issue already fully considered by the Commissioner."); *see* (R. at 32, citing R. at 510, 515, 523, 549, 599, 799, 807, 811, 821, 921, 926, 931; R. at 34, citing R. at 62–65).

Yet, the other materials submitted by Plaintiff to the Appeals Council—the records from May 2, 2022, through November 14, 2022, from Kettering Health and the letter from Dr. Neel dated December 6, 2022, confirming Plaintiff's ALS diagnosis—are new. These records were created after the ALJ's decision but before the Appeals Council's denial. (*See* R. at 21–45 (ALJ's decision dated March 18, 2022), 75–198 (medical records dated from May 2022 until December 2022), 8–14 (Appeals Council decision dated April 18, 2023)). Furthermore, the Undersigned finds that Plaintiff has established good cause for failing to obtain this evidence before the hearing, because this evidence results from Plaintiff continuing to seek medical treatment and not merely for the purpose of attempting to prove disability. *See Farler v. Astrue*, No. 1:10-cv-657, 2011 WL 3715047, at *6 (S.D. Ohio July 29, 2011) ("New evidence is cumulative and not sufficient to warrant remand if it relates to an issue already fully considered by the Commissioner.") (citing *Powell v. Comm'r of Soc. Sec.*, No. 3:07-cv-074, 2008 WL 886134, at *9 (S.D. Ohio Mar. 28, 2008)).

Therefore, at issue here is whether the new evidence is "material." *Sizemore,* 865 F.2d at 711. If the evidence is relevant and probative of Plaintiff's condition prior to the ALJ's decision, and if there is reasonable probability that the ALJ would have reached a different decision had she considered this evidence, a remand under Sentence Six is appropriate. *Id.*

Importantly, the medical records from Kettering Health and Dr. Neel's letter are the first objective evidence suggesting Plaintiff has ALS. In retrospect, these records provide evidence supporting Plaintiff's alleged pain, weakness, difficulties with fine and gross motor movements, and other symptoms that the ALJ determined were not credible or "consistent with the medical evidence and other evidence in the record." (R. at 35). As such, the new evidence bolsters his

credibility, and there is a reasonable probability that the ALJ's decision would have been impacted had she given more weight to Plaintiff's subjective reports about his symptoms.

The record before the ALJ included numerous reports from Plaintiff about pain and numbness in his neck, arms, and upper back, as well as difficulties using his hands, particularly his left hand. (*See* R. at 467, 470, 510, 522–23, 524, 564, 566, 572, 693, 813, 816–17, 822, 825, 838, 848, 978, 1009 (reporting pain in Plaintiff's neck); R. at 467, 510, 517, 519, 524, 564–66, 572, 693, 700, 703, 813, 816–17, 822, 848, 978, 988, 1009 (describing pain and numbness in Plaintiff's upper extremities); R. at 517, 519, 524, 700 (stating that pain is worse in Plaintiff's left hand and arm than in his right); R. at 821 (referring Plaintiff to physical therapy for his neck and lower back)). Yet the ALJ pointed to a lack of objective medical evidence in the record supporting Plaintiff's alleged symptoms. (*See* R. at 28, 34–35). The ALJ also highlighted a lack of treatment for his upper body and found his description of his symptoms to be "inconsistent" with the record. (R. at 35).

The new medical records and diagnosis provide support for Plaintiff's subjective reports. For instance, the records show increasing weakness in Plaintiff's left side from May 2022 until October 2022, as well as other issues with his upper extremities. (R. at 95, 105, 110, 116, 168, 190–191). In fact, in May 2022, Plaintiff's upper body was x-rayed due to his reported pain in his left shoulder. (R. at 190–191). Then, in October 2022, emergency department providers noted "appreciable left-sided weakness in comparison to the right side" as well as Plaintiff's complaints of "bilateral upper and lower extremity numbness and weakness." (R. at 110). In October 2022, medical providers agreed that ALS was Plaintiff's likely diagnosis, and in December 2022, Dr. Neel confirmed his ALS diagnosis. (R. at 110, 115; R. at 75).

While the remedy for worsening symptoms is a new disability application and not a Sentence Six remand, these records do more than show Plaintiff's deteriorating condition. *See Sizemore v. Sec'y Health & Human Serv.*, 865 F.2d 709, 712 (6th Cir. 1988) ("If in fact the claimant's condition had seriously degenerated, the appropriate remedy would have been to initiate a new claim for benefits as of the date that the condition aggravated to the point of constituting a disabling impairment."). Rather, they include a new diagnosis of ALS, which supports Plaintiff's subjective reports of his symptoms, and they show a progression of his disease consistent with that diagnosis and Plaintiff's descriptions. *See* DI 23022.100 Amyotrophic Lateral Sclerosis (ALS), SSA POMS DI 23022.100 (describing ALS as a "rapidly progressive…neurological disease" in Social Security Administration policy materials).

While the symptoms in the new records do show deterioration, the new records also provide objective medical support for the symptoms Plaintiff described for years. For instance, in the medical records the ALJ reviewed, Plaintiff described left-side weakness and numbness and pain in his left arm and hand multiple times to medical providers. (*See e.g.*, R. at 517, 519, 524, 700). Plaintiff also described breathing issues and was diagnosed with COPD, although Dr. Rami Alashram stated in May 2021 that Plaintiff's "pulmonary function test did not reveal evidence of COPD, on the contrary revealed some very mild restrictive lung disease." (R. at 764). The new evidence bolsters those reports by providing a medical diagnosis explaining them and physical examinations consistent with the symptoms he described. (R. at 75, 190–91).

Moreover, the difficulties in diagnosing ALS are present in the record presented to the ALJ, and Plaintiff's eventual diagnosis between October 2022 and December 2022 explains the inconsistencies in the record that troubled the ALJ. *Hernandez v. Berryhill,* No. 3:17-cv-00419, 2019 WL 4696320, at *2 (S.D. Ohio Sept. 26, 2019) ("Because these objective findings could

12

serve to explain Plaintiff's right arm limitations, it is evidence of an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms.") (internal quotations omitted); *see also Snider v. Comm'r of Soc. Sec.*, 328 F. Supp.2d 703, 710 (E.D. Mich. July 19, 2004) (finding that a doctor's new findings could confirm the claimant's testimony and fill in gaps that "troubled the ALJ"). The Social Security Administration notes that "[t]here is no one test or procedure to establish [a] diagnosis" for ALS. *See* DI 23022.100 Amyotrophic Lateral Sclerosis (ALS), SSA POMS DI 23022.100. While EMGs and other testing may support an ALS diagnosis, these tests "may be negative or only suggestive of the diagnosis." *Id.* Instead, to diagnose ALS, providers must rely on a patient's history, "neurological findings consistent" with the disease, and testing to rule out other impairments with similar signs and symptoms. *Id.* In other words, diagnosis takes time.

Plaintiff's medical records that were reviewed by the ALJ show confusion caused by a lack of positive testing, and they show doctors progressively ruling out or considering other conditions that could explain his symptoms. (*See e.g.*, R. at 513, 515, 565, 580, 764). Yet the lack of positive testing or appropriate diagnoses caused the ALJ to find Plaintiff not eligible for various listings. Additionally, these factors caused the ALJ to find Plaintiff's subjective reports not credible or consistent with the record. For example, Plaintiff was at one point diagnosed with fibromyalgia. (R. at 565, 579). Yet the ALJ could not find evidence in the record to support fibromyalgia as one of Plaintiff's medical impairments because of a lack of positive tender points and other related symptoms. (R. at 33). The ALJ also found that Plaintiff could not meet the requirements of a listed impairment for inflammatory arthritis, because of a lack of objective medical evidence supporting Plaintiff's subjective reports about his difficulties with fine and gross motor movements. (R. at 28). And Plaintiff was diagnosed with COPD, but one doctor found no signs

13

of COPD in a pulmonary function test, stating Plaintiff had "very mild restrictive lung disease." (R. at 764).

But testing for ALS is often negative or "only suggestive," and had the ALJ had the later medical records and diagnosis, she may have found Plaintiff's description of his symptoms more credible. DI 23022.100 Amyotrophic Lateral Sclerosis (ALS), SSA POMS DI 23022.100. As such, the new records provide a "previously undiagnosed medical basis" for Plaintiff's reported symptoms, and there is a reasonable probability that this new evidence could have affected her decision. *Sizemore v. Comm'r of Soc. Sec.*, No. 1:13-cv-521, 2014 WL 4549020, at *21 (S.D. Ohio Sept. 12, 2014).

Moreover, had the ALJ considered Plaintiff's ALS diagnosis, the ALJ would have analyzed an entirely different listing under step four. *See Sizemore*, 2014 WL 4549020, at *21 (ordering a Sentence Six remand where the claimant was diagnosed with Autism Spectrum Disorder after the ALJ's decision, because the ALJ never analyzed the claimant's condition under Listing 112.10 for Autistic Disorder). A diagnosis of ALS is analyzed under Listing 11.10. For a claimant to qualify for this listing, they do not need "laboratory testing" establishing the ALS diagnosis unless "clinical findings of upper and lower motor neuron disease are not present in three or more regions." DI 24580.020 Evaluation of Amyotrophic Lateral Sclerosis (ALS), SSA POMS DI 24580.020. Additionally, evidence of the progression of the disease "must be documented through clinical or electrophysiological changes over time." Negative test results, such as a negative EMG, are also not dispositive "if other clinical findings are present that are consistent with ALS and other potential disorders have been ruled out." *Id.* The listing also acknowledges that ALS's "gradual onset" can delay diagnosis. *Id.*

14

Here, Plaintiff's new evidence is material, because when considered with the record before the ALJ, the records could show the progression of the disease, as required by Listing 11.10. Plaintiff's symptoms, as documented in the record before the ALJ, could also be consistent with ALS, including his pain, difficulty moving his arms and legs, breathing problems, and muscle weakness. *See* DI 24580.020 Evaluation of Amyotrophic Lateral Sclerosis (ALS), SSA POMS DI 24580.020; DI 23022.100 Amyotrophic Lateral Sclerosis (ALS), SSA POMS DI 23022.100. Additionally, this listing provides for the fact that medical tests like EMGs may not be positive even though a person has ALS. *Id.* And had the ALJ considered Plaintiff's new evidence, she could have properly analyzed his medical records as a whole, placing less emphasis on medical tests as instructed by the listing. *See* DI 24580.020 Evaluation of Amyotrophic Lateral Sclerosis (ALS), SSA POMS DI 24580.020 ("The existence of ALS is not established by any specific, single test. The diagnosis of ALS is based on history, clinical findings consistent with the diagnosis and electrophysiological and neuroimaging studies to rule out other impairments that may cause similar signs and symptoms. The diagnosis may also be supported by EMG or NCV studies, but these tests may also be negative or only suggestive of the diagnosis. A negative test result will not preclude a diagnosis of ALS if other clinical findings are present that are consistent with ALS and other potential disorders have been ruled out."). Said differently, the ALJ would have had a different framework that potentially would have remedied her concerns about the record.

This case is similar to *Everett v. Commissioner of Social Security*, where a remand was granted under Sentence Six based on new evidence showing the plaintiff's diagnosis of multiple sclerosis (MS). No. 1:11-cv-219, 2023 WL 3731388, at *8–11 (S.D. Ohio Aug. 28, 2012), *report and recommendation adopted*, No. 1:11-cv-219, 2012 WL 4506293 (S.D. Ohio Oct. 1, 2012). Like ALS, multiple sclerosis is a progressive disease. *Id.* at *8. In *Everett*, the ALJ initially denied the

15

plaintiff's disability application, partially due to finding that the plaintiff's subjective reports were not "fully credible." *Id.* The new records submitted for a Sentence Six remand included, for the first time, an MS diagnosis, which supported the plaintiff's reports of her symptoms. *Id.* at *9. The Court found that a remand was appropriate. *Id.* at *10. The same is true here, where Plaintiff now submits evidence of an ALS diagnosis that supports his credibility and reported symptoms and explains the lack of associated positive testing that troubled the ALJ.

Furthermore, as noted by the Commissioner, Plaintiff submitted a second disability application after the Appeals Council's denial. (Doc. 9 at 4). Plaintiff's SSI application was approved with benefits backdated to April 25, 2022. (*Id.*). Because of the progressive nature of ALS, the ALJ should consider the likelihood of Plaintiff suddenly developing ALS in the thirty-eight days between the ALJ's denial on March 18, 2022, and the awarded benefits date of April 25, 2022. *See e.g.*, *Everett,* 2012 WL 3731388, at *9 ("At the very least, if plaintiff was granted SSI in December 2010 based on MS, it is reasonable to consider whether plaintiff's onset predated the December 2010 application date, recognizing that plaintiff's MS did not have its sudden onset on the date of her application."). The new evidence is relevant in determining whether Plaintiff had ALS prior to the ALJ's decision finding Plaintiff not disabled. *Id.* (citing *Begley v. Mathews,* 544 F.2d 1345, 1354 (6th Cir. 1976)).

Plaintiff should have the opportunity to have his new evidence considered at the agency level, and a Sentence Six remand is warranted here.

IV. **CONCLUSION**

Based on the foregoing, it is **RECOMMENDED** the Court **SUSTAIN** Plaintiff's Statement of Errors (Doc. 8), **VACATE** the Commissioner's findings, and **REMAND** this case under Sentence Six of 42 U.S.C. §405(g). While the Commissioner is considering the new and

material evidence on remand, this case is **ADMINISTRATIVELY CLOSED**. However, this Court retains jurisdiction over this action such that should Plaintiff be dissatisfied with the new decision of the Commissioner on remand, Plaintiff may petition the Court for entry of an Order reinstating the case on the active docket for judicial review of the new decision. Plaintiff must file said petition within 30 days of the date of the Commissioner's new decision. Should both sides be satisfied with the Commissioner's new decision following remand, the prevailing party shall, within 30 days of the Commissioner's decision, petition the Court for entry of a Final Order adopting and ratifying the new decision.

## V.     PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties' written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: November 17, 2023          <u>/s/ Kimberly A. Jolson</u>
                                 KIMBERLY A. JOLSON
                                 UNITED STATES MAGISTRATE JUDGE